UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABDOU KARIM SALL,

    Petitioner.

v.

DIRECTOR, U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, ET AL.,

    Respondents.
_____/

Case No. 18-10935

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
STEPHANIE DAWKINS DAVIS

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS [1]**

Petitioner Abdou Karim Sall, a native and citizen of Senegal, filed a Petition for Writ of Habeas Corpus [Dkt. 1] on March 21, 2018. Mr. Sall asks the Court to, among other things, issue a writ of habeas corpus directing Respondents – the Immigration and Customs Enforcement ("ICE") Agency's District Director for the Detroit office, Rebecca Adducci, ICE Deputy Director Thomas D. Homan, U.S. Secretary of Homeland Security Kirstjen M. Nielson, U.S. Attorney General Jefferson B. Sessions III, and Lieutenant Paul Stanaway – to release him immediately, subject to reasonable terms of supervision. Mr. Sall argues that he is being unlawfully detained[1] and that he is not subject to the mandatory detention provisions of section 236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c).

---

[1] Mr. Sall is detained at the Chippewa County Jail in Sault Ste. Marie, Michigan.

Respondents argue that Mr. Sall's detention pending completion of removal proceedings is mandated by § 1226(c). They maintain that the Court should defer to the Board of Immigration Appeals' ("BIA") interpretation of § 1226(c), as well as its decision in *In re Rojas*, 23 I. & N. Dec. 117 (B.I.A. 2001). *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

For the reasons discussed below, the Court will **GRANT** Mr. Sall's Petition for Writ of Habeas Corpus [1].

### FACTUAL AND PROCEDURAL BACKGROUND

35-year-old Petitioner Abdou Karim Sall is a native and citizen of Senegal. Mr. Sall's father, a former employee at the Senegal Consulate, helped his son enter the U.S. with a valid visa in April 2002. Mr. Sall's father returned to Senegal two years later.

Shortly after arriving in the U.S., Mr. Sall began working as a street vendor in New York, making approximately $30-$40 per day. He was convicted of petit larceny in Hempstead, New York on November 22, 2006. Four or five years later, Mr. Sall met his current wife, Kalissa Maxwell-Sall, who is an American citizen. He converted to Christianity around this time.

Mr. Sall was convicted of four fraud-related offenses in New York between September 2010 and December 2012. These convictions, for third degree trademark counterfeiting and theft of services, related to his work as a street vendor and his failure to pay for public and private transportation in New York City.

Mr. Sall's son, Elhadji Sall, was born in New York in June 2013. It appears that Mr. Sall and his family moved to Michigan sometime after 2015.[2]

Mr. Sall suffers from bipolar disorder. During the summer of 2017, Kalissa observed her husband's mental health issues for the first time. He behaved in erratic, strange, and aggressive ways. One day, in June 2017, Mr. Sall apparently wandered away from home. When Kalissa found him and he returned home, he hit her on the back and on the back of the head. Mr. Sall was convicted of a disorderly person offense on June 27, 2017. The following day, Mr. Sall was taken into custody.

On July 10, 2017, an Immigration Court judge denied Mr. Sall's request for an individualized bond hearing, on the grounds that Mr. Sall is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c). Mr. Sall did not apply for asylum until he was in immigration court.

Kalissa and Mr. Sall married on August 18, 2017, while Mr. Sall was in custody. Their daughter, Adalisa Gloriana Sall, was born in White Lake, Michigan in October 2017.

On November 20, 2017, a second Immigration Court judge denied Mr. Sall's application for asylum and ordered that he be removed to Senegal. The judge also, however, granted Mr. Sall's application withholding of removal, which forbids the Department of Homeland Security ("DHS") from removing Mr. Sall to Senegal. Mr.

---

[2] In the oral decision denying asylum and granting withholding of removal, the Immigration Judge noted that Mr. Sall "testified that he was hospitalized several times in New York City between 2000 and 2015 for depression." *See* Dkt. 1, Pg. ID 27.

Sall waived his right to appeal on all issues. DHS appealed the judge's grant of withholding removal to the BIA.

The BIA issued its decision on May 8, 2018. The BIA remanded Mr. Sall's case for further proceedings, on the grounds that the Immigration Court judge failed to "explain why she believed that the respondent's proposed particular social group[3] was cognizable under section 241(b)(3) of the [INA]." (Dkt. 6, Pg. ID 94). The BIA directed the Immigration Court judge to enter a new decision "setting forth – pursuant to the applicable statutes, regulations, and case law – her basis for granting" Mr. Sall's application for withholding of removal. *Id.* at Pg. ID 95.

## LAW AND ANALYSIS

This case involves the BIA's construction of 8 U.S.C. § 1226(c). Accordingly, the Court applies the two-step analysis described as follows in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984):

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

8 U.S.C. § 1226(c) provides:

---

[3] Mr. Sall explained that his proposed social group "consist[ed] of indigent Senegalese citizens in Senegal without family support with bipolar disorder who exhibit outwardly erratic behavior." (Dkt. 6, Pg. ID 94).

(c) Detention of criminal aliens

   (1) Custody

   The Attorney General shall take into custody any alien who –

     (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
     (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
     (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence [sic] to a term of imprisonment of at least 1 year, or
     (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

**when the alien is released**, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

   (2) Release

   The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides . . . that release of the alien from custody is necessary to provide protection to a witness . . . and the alien satisfies the Attorney General that the alien will not pose a danger to the safety or other persons or of property and is likely to appear for any scheduled proceeding . . . .

(emphasis added).

The Court joins the majority of others courts in this District in concluding that § 1226(c) does not apply to an individual not taken into custody immediately upon release from criminal custody. *See Hamama v. Adducci*, 285 F.Supp.3d 997, 1016 (E.D. Mich. 2018); *Rosciszewski v. Adducci*, 983 F.Supp.2d 910, 916 (E.D. Mich. 2013); *Khodr v. Adduci*, 697 F.Supp.2d 774, 778 (E.D. Mich. 2010). "[T]he phrase

'when the alien is released' clearly and unambiguously requires that the Attorney General take the alien into custody immediately upon the alien's release from criminal custody." *Khodr*, 697 F.Supp.2d at 778. By using the word 'when,' "Congress demonstrated its intent that such aliens be taken into custody contemporaneous with their release or not at all (at least under section 1226(c))." *Id.* at 778-79. The *Khodr* Court also noted that the BIA "agreed with this reading of the statute." *Id.* at 779 (citing *Matter of Rojas*, 23 I. & N. Dec. 117, 122 (BIA 2001)).

These courts also highlighted the delay between the time petitioners were released from criminal custody and the time they were taken into ICE custody. *Id.* at 780 (finding that "the four year plus delay in taking Petitioner into custody was clearly an unreasonable delay."); *see also Rosciszewski*, 983 F.Supp.2d at 916 (an 11 year delay between release from criminal custody and entering ICE custody is clearly unreasonable delay); *Zabadi v. Chertoff*, 2005 WL 3157377, at *1-2 (N.D. Cal. Nov. 22, 2005) (a two-year period between release from criminal custody and ICE detention was deemed unreasonable for § 1226(c) purposes).

In this case, Mr. Sall's most recent conviction for a deportable offense was theft of services in December 2012. This nearly five year delay is clearly unreasonable under § 1226(c).

## CONCLUSION

For the reasons set forth above,

'when the alien is released' clearly and unambiguously requires that the Attorney General take the alien into custody immediately upon the alien's release from criminal custody." *Khodr*, 697 F.Supp.2d at 778. By using the word 'when,' "Congress demonstrated its intent that such aliens be taken into custody contemporaneous with their release or not at all (at least under section 1226(c))." *Id.* at 778-79. The *Khodr* Court also noted that the BIA "agreed with this reading of the statute." *Id.* at 779 (citing *Matter of Rojas*, 23 I. & N. Dec. 117, 122 (BIA 2001)).

These courts also highlighted the delay between the time petitioners were released from criminal custody and the time they were taken into ICE custody. *Id.* at 780 (finding that "the four year plus delay in taking Petitioner into custody was clearly an unreasonable delay."); *see also Rosciszewski*, 983 F.Supp.2d at 916 (an 11 year delay between release from criminal custody and entering ICE custody is clearly unreasonable delay); *Zabadi v. Chertoff*, 2005 WL 3157377, at *1-2 (N.D. Cal. Nov. 22, 2005) (a two-year period between release from criminal custody and ICE detention was deemed unreasonable for § 1226(c) purposes).

In this case, Mr. Sall's most recent conviction for a deportable offense was theft of services in December 2012. This nearly five year delay is clearly unreasonable under § 1226(c).

## CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus [1] is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents shall release Petitioner from custody immediately.

**IT IS FURTHER ORDERED** that Respondents shall transport Petitioner from the Chippewa County Jail to Petitioner's home in White Lake, Michigan.

**IT IS FURTHER ORDERED** that Respondents shall not detain Petitioner in any custodial facility, but shall instead require that he submit to the electronic tethering program administered by the U.S. Pretrial Services.

**IT IS FURTHER ORDERED** that Petitioner will, in the company of his lawyer, meet with a representative from U.S. Pretrial Services for initiation of the tethering program.

**IT IS FURTHERED ORDERED** that Petitioner shall not leave the Eastern District of Michigan.

**IT IS FURTHER ORDERED** that Petitioner shall report daily (or less frequently, as required by U.S. Pretrial Services) by telephone to Pretrial Services.

**IT IS FURTHER ORDERED** that Respondents shall recommend to the immigration judge that this case receive priority consideration for an early removal hearing.

**IT IS FURTHER ORDERED** that Petitioner will enroll in a mental health treatment program.

**IT IS FURTHER ORDERED** that this Order will be in effect until further order of the Court. Modifications to this Order may be made by stipulation of the parties or, in the event of changed circumstances, through application to the Court.

**SO ORDERED**.

Dated: May 24, 2018

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge